**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DIANE M. JOHNSON,**

       **Plaintiff,**

v.                                                                                          6:01-CV-1881
                                                                                            (NAM/RFT)
**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**
_____

APPEARANCES:                                                                OF COUNSEL:

Olinsky & DiMartino                                                         Howard Olinsky, Esq.
186 West First Street
Historic First National Bank
Oswego, New York 13126
Attorney for Plaintiff

HON. GLENN T. SUDDABY
United States Attorney for the
Northern District of New York                                               William H. Pease, Esq.,
Office of the United States Attorney                                        Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198
Attorney for Defendant

Hon. Norman A. Mordue, D.J.:

**MEMORANDUM-DECISION and ORDER**

**I.     INTRODUCTION**

      Plaintiff Diane M. Johnson brings the above-captioned action pursuant to 42 U.S.C. §§

405(g) and 1382(c)(3)of the Social Security Act, seeking review of the Commissioner of Social

Security's decision to deny her application for Supplemental Security Income ("SSI") benefits.

This matter was referred to United States Magistrate Judge Randolph F. Treece for a Report-

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Treece recommended that this Court affirm the Commissioner's decision denying disability benefits. Presently before the Court are plaintiff's objections to the Report-Recommendation.

## II.   FACTUAL BACKGROUND

Neither party has objected to Magistrate Judge Treece's recitation of the background in this case. Accordingly, the Court adopts the portion of the Report and Recommendation entitled "Background" in its entirety:

> Johnson, born on January 26, 1953, stands approximately five-feet two-inches tall and weighs two hundred forty-eight pounds. Tr. at 146. Johnson has completed her high school education, as well as two years of college, and is pursuing her bachelor's degree part time. Tr. at 38. Johnson, an unemployed mother of four, remains at home to care for her eight-year-old twins. Tr. at 36-41. Johnson last worked on a regular basis in 1987 at a temporary clerical receptionist position. Tr. at 40. Since 1987, Johnson has attempted to work temporary clerical jobs to maintain her public assistance but has been unable to keep them because of her behavior at work. Tr. 50-51.
>
> Johnson has had a prolonged history of mental and medical impairments. In 1992, she was diagnosed by the Oswego County Council on Alcoholism Clinic Director with alcohol dependence (moderate, in remission), adjustment reaction with mixed emotional features (co-dependency), post traumatic stress disorder (due to past sexual abuse). Tr. at 142-143. Additionally, she had high blood pressure, was severely overweight, and had allergies. *Id.* At the time of Johnson's hearing before ALJ Chwalek, she alleged disability due to a mental condition marked by "severe depression and [an] anxiety problem" as well as diabetes. Tr. at 67.
>
> In October of 1998, Johnson's treating physician since 1990, Joseph Mather, M.D., listed her treating diagnoses as anxiety, diabetes, and anovulation. Tr. at 146. On past visits, Dr. Mather noted that Johnson was "very emotional," and had encouraged her to continue counseling.2 Tr. at 153. On August 31, 1999, Johnson's other treating physician, Corliss Varnum, M.D., who had been treating Johnson since 1991, diagnosed her with diabetes, hypercholesterolemia, and obesity. On prior visits Dr. Varnum had noted that Johnson was a "very anxious lady," that she experienced "a lot of anxiety," and that she had "a lot of emotional problems." Tr. 183-84. Dr. Varnum also prescribed continued counseling to Johnson on more than one occasion. Tr. at 163-64.

2

On December 8, 1999, Johnson was prescribed 20 mg of Prozac daily by Suresh Patil, M.D., to help her deal with her anxiety and depression. Tr. at 251. According to Dr. Patil's notes, Johnson related that her anxiety stemmed from uneasiness with being separated from her children, whom she worried would not return when they went to school. *Id*. This anxiety drove Johnson to picking her children up from school personally, rather than wait for the bus to drop them off. *Id*. Dr. Patil noted, after a follow up visit in January of 2000, that there was apparently no change in Johnson's depression despite the medication. Dr. Patil urged Johnson to increase her dosage, but she refused. Tr. at 248.

Kalyani Ganesh, M.D., and Kristen Barry, Ph.D., administered consultative examinations for the Social Security Administration. Dr. Ganesh gave Johnson an internal medicine examination. Tr. at 212. After examining Johnson, Dr. Ganesh noted Plaintiff exhibited no "gross physical limitations to sitting, standing, walking, climbing, bending or the use of her extremities," and surmised that she suffered from anxiety, depression, and panic attacks, as well as a history of diabetes which is managed by a diet, hypertension, arthritis, seasonal allergies, and obesity. Tr. at 214. Johnson was also given a consultative psychological evaluation by Dr. Barry. Tr. at 220-25. At the outset of the examination, Johnson informed Dr. Barry that she had been experiencing anxiety since 1994, and that she was constantly worried about her children when apart from them, which typically led to the onset of panic attacks. Tr. at 222. Dr. Barry noted that Johnson was anxious throughout the evaluation and that the anxiety impaired Johnson's attention and concentration as well as recent and remote memory skills. Tr. at 222-23. Dr. Barry diagnosed Johnson with anxiety disorder NOS (Not Otherwise Specified), depressive disorder NOS, histrionic personality disorder, as well as allergies, sinus problems, diabetes, hypertension, and bronchial asthma. Tr. at 224. Dr. Barry concluded that Johnson would have "difficulty making appropriate decisions and demonstrating consistency in job performance." *Id*.

On February 20, 2000, Johnson was seen by Prasad Lakshman, M.D., Oswego Hospital staff psychiatrist as well as her psychiatric social worker Ann C.R. Millet, MS, MSW, CSW, for a scheduled visit. Tr. at 284. At that time, Johnson was diagnosed with dysthymia as well as dependent personality disorder. Id. It was also noted that Johnson was taking the Prozac prescribed by the clinic and that she believed the medicine considerably helped to reduce her anxiety. *Id*.

Finally, for the ALJ Hearing, Johnson's physical and mental capability to do work related activities was evaluated. After physically evaluating Johnson on June 20, 2000, her treating physician, Dr. Varnum, stated that Johnson could occasionally lift up to fifty pounds, carry up to twenty pounds, and could frequently lift up to twenty pounds, and carry up to ten pounds. Tr. at 288. Dr. Varnum noted that Johnson's capabilities to sit, stand, walk, and use her hands and feet were all unaffected by any impairment. Tr. at 289. Moreover, Dr. Varnum also related that Johnson could perform all postural activities, as well as push and pull occasionally, and could

3

frequently reach, handle, and feel. Tr. at 290. On June 24, 2000, Johnson's psychiatric social worker, Ms. Millet, completed an assessment of Johnson's mental ability to do work related activities based on her June 8, 2000 evaluation of Johnson. Tr. at 292-95. This assessment rated Johnson's mental ability to do work related activities as fair (ability to function is limited but satisfactory) or good (ability to function is more than satisfactory) in every category. Tr. at 293.

Dkt. no.13., pp.2-5.

### III.    Administrative Law Judge's Decision

To be eligible for SSI benefits, a claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the SSA bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted)).

In this case, the Administrative Law Judge ("ALJ") found at step one, that plaintiff had not engaged substantial gainful activity since October 22, 1999.  At the second step, the ALJ determined that plaintiff's dysthymia was a severe impairment.  At the third step, the ALJ concluded that plaintiff's dysthymia neither met nor equaled an impairment listed in Appendix 1 of the Regulations.  At the fourth step, the ALJ found that plaintiff had no past relevant work,

4

and, in view of her non-exertional limitations, had a residual functional capacity to perform only light exertional activity. Accordingly, the burden shifted to the Commissioner to show, at step five, the existence of jobs in sufficient numbers in the national economy which Johnson was capable of performing. At the fifth step, relying on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Johnson could perform. The ALJ therefore concluded that Johnson was not eligible for SSI benefits. The Appeals Council denied Johnson's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

**IV.     Report-Recommendation**

In the Report-Recommendation, Magistrate Judge Treece found that: (1) the ALJ properly considered plaintiff's anxiety at step two of the evaluation, and throughout, as part of her dysthymia; (2) since her anxiety condition did not meet or equal a listed impairment, plaintiff's claim that the ALJ should have concluded, at step three, that she was disabled, is without merit; (3) the ALJ posed a valid hypothetical question to the vocational expert, and that there was substantial evidence in the record to support the assumptions on which the vocational expert based his opinion; and (4) plaintiff's contention that her prior application for SSI benefits should be reopened, was without merit. Accordingly, Magistrate Judge Treece recommended that the Court affirm the decision of the Commissioner to deny plaintiff's application for SSI benefits.

Presently before the Court are plaintiff's objections to Magistrate Judge Treece's Report-Recommendation. Specifically, plaintiff objects to Magistrate Judge Treece's conclusion that: (1) the ALJ properly treated plaintiff's anxiety as part of her dysthymia rather than evaluating anxiety as a distinct impairment at step two, and throughout the evaluation process; and (2) the ALJ's

5

hypothetical question to the vocational expert was supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court engages in a *de novo* review of any part of a magistrate judge's report-recommendation to which a party specifically objects.  Failure to object timely to any portion of a magistrate's report-recommendation operates as a waiver of further judicial review of those matters.  *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Secretary of Health & Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989).  Accordingly, the Court adopts, without further discussion, those portions of the Report-Recommendation to which plaintiff does not object.

**V.     Discussion**

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when a decision is based on legal error.  42 U.S.C. § 405(g); *Shaw*, 221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*, 221 F.3d at 131 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  As noted, the Court also reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard.  *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

**A.     Anxiety**

Plaintiff contends that the ALJ erred at step two, and throughout the remainder of the sequential process, by evaluating her anxiety in the context of her dysthymia diagnosis, instead of as a separate, severe impairment.  The Second Circuit has "long recognized, the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate

their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). While the ALJ did not identify plaintiff's anxiety as a severe impairment, the ALJ specifically evaluated plaintiff's anxiety in the context of her functional capacity and throughout the evaluation process. Indeed, the ALJ noted plaintiff's continuing anxiety about her children's safety, as well as anxiety's effects on her ability to function in a work setting, behave in a stable manner, and relate in social situations. The ALJ also asked the vocational expert to consider whether there were jobs plaintiff could perform in view of the medical assessment by Ann Millet, plaintiff's psychiatric social worker, who believed that plaintiff's anxiety level limited a number plaintiff's abilities, including her capacity to follow work rules, relate to co-workers, use judgment, deal with the public, deal with work stress, and maintain concentration. Accordingly, the Court finds plaintiff's objection is without merit.

### B. Vocational Expert

Plaintiff contends that the hypothetical question the ALJ posed to the vocational expert was not based on substantial evidence. Consequently, plaintiff argues, the vocational expert's opinion that there are jobs in significant numbers in the national economy which plaintiff is capable of performing, is not supported by substantial evidence. Magistrate Judge Treece thoroughly evaluated this contention, and the Court, having reviewed this aspect of the Report-Recommendation *de novo*, finds plaintiff's objection to be without merit.

In this case, the ALJ asked the vocational expert whether there were any jobs existing in substantial numbers that a claimant with plaintiff's vocational and educational background, and who had the non-exertional limitations that Millet, and her treating physician, Corliss Varnum,

7

M.D., identified, could perform. The vocational expert responded that a person with such a background, who is:

> limited to light exertional activity, lifting up to 20 [sic] frequently, carrying 10 pounds frequently and 11-20 pounds occasionally; there is no restriction in sitting, standing, walking or in the use of the hands; can occasionally climb, balance, stoop, crouch, kneel and crawl; can frequently reach, handle, feel and occasionally push/pull and has the following non-exertional limitations; fair ability to follow work rules, relate to co-workers, deal with public, use judgment deal with work stress and maintain attention and concentration and a good ability to interact with supervisors and function independently; good ability to maintain personal appearance, fair ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability . . .

Tr. at 133-34, could perform several jobs, including meter reader, mail clerk, and hotel housekeeper.

Plaintiff argues that the hypothetical, which assumes the findings in Millet's medical assessment, is not supported by substantial evidence because Millet was a social worker, not a medical source, and because Millet's opinion conflicted with that of Kristen Barry, Ph.D., who was a medical source. Plaintiff further claims that the ALJ's acceptance of Millet's conclusions, "without further explanation does not provide the substantial evidence necessary to uphold the step 5 determination." Plaintiff also argues that the ALJ asked the vocational expert a hypothetical question based on the ultimate fact to be established and therefore asserts that vocational expert's opinion is insufficient to support the ALJ's finding at step five.

A "vocational expert's testimony is only useful if it addresses whether the particular claimant, with [her] limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (citing *Parker v. Harris*, 626 F.2d 225, 231, n.5 (2d Cir. 1980)). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554

(2d Cir. 1983).

In this case, the ALJ recounted Dr. Barry's conclusions from her examination of plaintiff, but ultimately relied on Millet's opinion regarding plaintiff's functional limitations. Dr. Barry, a psychologist, performed a psychiatric examination of plaintiff and stated:

> The claimant at this time appears to be a fairly intelligent individual who is able to follow and understand simple directions and instructions. However, she is extremely emotional, displays a great deal of anxiety and depression and has difficulty maintaining attention and concentration due to this. She would also have difficulty making appropriate decisions and demonstrating consistency in job performance. Her social skills are fair to poor. She does demonstrate difficulty dealing with stressors.

Tr. at 224. Dr. Barry also noted that: "[t]he claimant's affect was extremely anxious"; [s]he struggled significantly with simple calculations"; [t]he claimant's recent and remote memory skills were impaired . . . [s]he struggled significantly with recalling a series of numbers"; "her insight . . . is limited"; and that "[h]er judgment is poor". Tr. at 223. As Magistrate Judge Treece found, however, while Millet's opinion is supported by the record as a whole, Dr. Barry's opinion differs not only from Millet's opinion, but from the opinion of other medical sources:

> Both of the reviewing physicians, Dr. Fras, and Dr. Mata, completed an assessment of Johnson's capacity to sustain twenty different mental abilities over a normal workday and workweek. Tr. at 233-34, 280-81. These activities were broken into four categories: 1) Understanding and Memory, 2) Sustained Concentration and Persistence, 3) Social Interaction, and 4) Adaptation. *Id*. In almost all of the categories, the reviewing physicians found Johnson was not significantly limited, and in the remaining categories they found her only moderately limited. *Id*. . . . . Ms. Millet, who assessed Johnson by rating her in fifteen categories in which she noted that Johnson's ability was either limited but satisfactory, or more than satisfactory in all categories. Tr. at 293-94. Dr. Barry's opinion is also at odds with the clinical psychiatric assessment completed by Dr. Prasad Lakshman and Ann Millet. While Dr. Barry found Johnson's attention and concentration, and recent and remote memory skills impaired due to Johnson's emotionality and anxiety, Dr. Lakshman and Ms. Millet found Johnson's thought processes logical and coherent, and her recent and remote memory adequate. Tr. at 223 & 284.

9

Dkt. no.13, p.19. Having reviewed the record, the Court concludes that the limitations set forth in Millet's assessment are supported by the record. Consequently, the Court finds that the hypothetical the ALJ submitted to the vocational expert, which asked the vocational expert to assume Millet's assessment of plaintiff's limitations, is supported by substantial evidence.

Plaintiff argues that the ALJ's acceptance of Millet's opinion regarding plaintiff's limitations, and rejection of Dr. Barry's, "without further explanation, does not provide . . . substantial evidence". Dkt. no.14, p.4. The Second Circuit, however, does "not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony". *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983). Moreover, as already discussed, the record does not support Dr. Barry's opinions regarding the extent to which plaintiff's anxiety affects her limitations.

Plaintiff also asserts that the ALJ erred as a matter of law by accepting Millet's opinion, over Dr. Barry's opinion, because Millet was a social worker and not medical source. Since a medically determinable impairment, dysthymia, was established in this case, the ALJ was permitted to draw evidence from "other sources" "to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work". 20 C.F.R. § 416.913(d). Indeed, the regulations specifically identify "[p]ublic and private social welfare agency personnel" as "other sources". 20 C.F.R. § 416.913(d)(3). Thus, plaintiff's assertion is of no consequence.

Finally, because the hypothetical the ALJ posed to the vocational expert assumed limitations supported by the record, plaintiff's argument that the ALJ "asked the vocational expert the ultimate fact to be established" is without merit. *Cf. Buzzeo v. Harris*, 486 F.Supp. 690, 693-94 (S.D.N.Y. 1980) (concluding that because the vocational expert's testimony was based on an

10

assumption of the ultimate fact to be established, it was "insufficient to support the ALJ's finding."). Thus, having reviewed the Report-Recommendation *de novo*, the Court agrees with the Magistrate Judge that the hypothetical question the ALJ posed to the vocational expert was supported by substantial evidence. Accordingly, plaintiff's objection is without merit.

## VI. CONCLUSION

For the above stated reasons, it is

ORDERED that the Report-Recommendation and Order of Magistrate Judge Treece is ADOPTED in its entirety; and it is further

ORDERED that the decision of the Commissioner is AFFIRMED; and it is further

ORDERED that the Clerk of the Court close this case.

IT IS SO ORDERED.

Dated: January 24, 2006
Syracuse, New York

Norman A. Mordue
U.S. District Judge

11